UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

BYRON JAMES SHEDD,                )
                                  )
    Plaintiff                     )
                                  )
v.                                )    No. 1:14-CV-00086-JAW
                                  )
CAROLYN W. COLVIN, Acting Commissioner )
of Social Security,               )
                                  )
    Defendant                     )

**REPORT AND RECOMMENDED DECISION**

Plaintiff Byron Shedd applied for supplemental security income benefits under Title XVI of the Social Security Act. Defendant, the Social Security Administration Acting Commissioner, found that Plaintiff has severe impairments, but that he retains the functional capacity to perform substantial gainful activity. Defendant, therefore, denied Plaintiff's request for disability benefits.

The matter is before the Court on Plaintiff's request for judicial review of the administrative determination. Following a review of the record, and after consideration of the parties' written and oral arguments, as explained below, the recommendation is that the Court affirm the administrative decision.

**THE ADMINISTRATIVE FINDINGS**

The Commissioner's final decision is the January 17, 2013, decision of the Administrative Law Judge (ALJ).[1] In the decision, the ALJ tracks the familiar five-step sequential evaluation process for analyzing social security disability claims, 20 C.F.R. § 416.920. (ECF No. 10-2, PageID # 40-59.)

---

[1] Because the Appeals Council "found no reason" to review that decision (PageID # 32), the Acting Commissioner's final decision is the ALJ's decision.

At step 1 of the sequential evaluation process, the ALJ found that Plaintiff has not engaged in substantial gainful activity since June 14, 2010, the date he filed his Title XVI application. (PageID # 45, ¶ 1.) At step 2, the ALJ determined that Plaintiff has the following severe impairments: attention deficit hyperactivity disorder, affective disorder, anxiety disorder, and substance abuse disorder. The ALJ concluded that Plaintiff's hypertension, though established in the record, is controlled by medication. (*Id.*, ¶ 2.) At step 3, the ALJ found that Plaintiff's mental impairments do not meet or equal any listing in the Commissioner's Listing of Impairments, Appendix 1 to 20 C.F.R. Part 404, Subpart P.

Prior to further evaluation at steps 4 and 5, the ALJ assessed Plaintiff's residual functional capacity (RFC). The ALJ determined that Plaintiff's combined impairments leave him with a RFC to perform a full range of work at all levels of exertion and that he can engage in sustained competitive work that requires that he (1) understand, remember, and carry out simple work-related instructions; (2) use judgment in making simple decisions; (3) respond appropriately to coworkers, supervisors, and usual work situations; and (4) adapt to changes in the ordinary work setting. (PageID # 48, ¶ 4.)

Because Plaintiff has no past relevant work within the meaning of 20 C.F.R. § 416.965 to evaluate at step 4, the ALJ determined Plaintiff's claim at step 5. Using section 204.00 of the Medical-Vocational Guidelines (the "Grid") as a framework for decision-making, and citing Social Security Ruling 85-15, the ALJ found that Plaintiff's non-exertional limitations "have little or no effect on the occupational base of unskilled work at all exertional levels." The ALJ thus concluded that a finding of "not disabled" was appropriate.

## DISCUSSION

Plaintiff argues that his depression and related mood swings, anxiety, and high blood

pressure render him unable to work. He also alleges that he has bipolar disorder, and reports that he experiences racing thoughts, difficulty sleeping, and thoughts of suicide.

Plaintiff also challenges the following findings: (1) that he has only moderate limitations in activities of daily living; he contends that he has difficulty interpreting and completing paperwork, and understanding written instructions; (2) that he has only moderate limitations in concentration, persistence, and pace; he maintains that he suffers from "chronic depression and anxiety not directly related to substance abuse" and his mood interferes with concentration, which conditions make it difficult for him to interact with coworkers; and (3) that his blood pressure is not controlled by medication; he asserts that his blood pressure fluctuates with changes in his mood and he experiences light-headedness and weakness, especially in the heat. (Plaintiff's Statement of Errors, ECF No 16-1.)

**A. Standard of Review**

The Court must affirm the administrative decision so long as the decision applies the correct legal standards and is supported by substantial evidence, even if the record contains evidence capable of supporting an alternative outcome. *Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of HHS*, 819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS*, 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

**B. Analysis**

Plaintiff's arguments first generate an issue as to whether at step 2, the ALJ properly

excluded bipolar disorder and hypertension from the list of Plaintiff's severe impairments. Plaintiff also appears to argue that the ALJ's step 3 analysis is flawed because the ALJ did not find marked difficulties in activities of daily living or maintaining concentration, persistence, and pace. Finally, Plaintiff contests the RFC finding.

   *1. Step 2*

At step 2 of the sequential evaluation process, one must consider the severity of a claimant's impairments. The claimant has the burden to prove the existence of a severe, medically determinable, physical or mental impairment, or a severe combination of impairments, which meet the durational requirement of the Social Security Act. 20 C.F.R. § 416.920(a)(4)(ii). The step 2 requirement of "severe" impairment imposes a *de minimis* burden, designed merely to screen groundless claims. *McDonald v. Sec'y of HHS,* 795 F.2d 1118, 1123 (1st Cir. 1986). An impairment or combination of impairments is not severe when the medical evidence "establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* at 1124 (quoting Social Security Ruling 85–28). At step 2, medical evidence is required to support a finding of severe impairment. 20 C.F.R. § 416.928.

Although the claimant's burden at step 2 is low, remand is only appropriate when the claimant can demonstrate that an omitted impairment imposes a restriction beyond the physical and mental limitations recognized in the Commissioner's RFC finding and is material to the ALJ's "not disabled" finding at step 4 or step 5. *Socobasin v. Astrue,* 882 F. Supp. 2d 137, 142 (D. Me. 2012) (citing *Bolduc v. Astrue,* No. 09–CV–220–B–W, 2010 WL 276280, at *4 n. 3 (D. Me. Jan. 19, 2010) ("[A]n error at Step 2 is uniformly considered harmless, and thus not to require remand,

unless the plaintiff can demonstrate how the error would necessarily change the outcome of the plaintiff's claim.")).

Plaintiff maintains that he suffers from bipolar disorder and high blood pressure in addition to the other impairments identified as severe by the ALJ. As explained below, the record evidence does not compel a finding that the ALJ erred at step 2.

### a. Bipolar disorder

Donna Gates, Ph.D., conducted a psychological examination of Plaintiff on August 27, 2010. Among other findings, Dr. Gates noted Plaintiff's belief that he suffered from bipolar disorder, but concluded that Plaintiff does not meet the criteria for that disorder. (Ex. 3F, ECF No. 10-7, PageID # 412.) The ALJ gave significant weight to Dr. Gates's medical source statement, which provides substantial evidence for the finding that Plaintiff does not have bipolar disorder. (PageID # 51.)

In addition, the ALJ included Plaintiff's mental health symptoms among the factors relevant to the RFC assessment. As part of that assessment, the ALJ considered some of the symptoms and effects that Plaintiff believes are related to the bipolar disorder. Furthermore, the ALJ's mental RFC finding is consistent with the mental RFC assessment of consulting expert Lewis Lester, Ph.D. (Ex. 5F, ECF No. 10-7, PageID # 431), and is in accord with the testimony of Dr. Ira Hymoff (Hr'g Tr. at 22-23, ECF No. 10-2, PageID # 83-84). Insofar as the RFC assessment is supported by the testimony of three expert opinions, and given that the assessment considered the limiting effect of the symptoms about which Plaintiff complains, on this record, a diagnosis of bipolar disorder would not necessarily produce a different result.

### b. Hypertension

The ALJ discussed Plaintiff's blood pressure as a relevant concern at both step 2 and as

5

part of his RFC assessment. The ALJ found persuasive the assessment made by the state agency physician Herbert Blumenfeld, M.D. In his July 25, 2011, case analysis report, Dr. Blumenfeld concluded that the treatment records did not reflect a severe impairment related to hypertension. (Ex. 5A, PageID # 183.) Given the absence of a subsequent expert assessment of Plaintiff's RFC in which hypertension is cited as a basis for a limitation on Plaintiff's ability to engage in substantial gainful activity, Dr. Blumenfeld's assessment constitutes substantial evidence in support of the ALJ's finding that Plaintiff's hypertension is not a severe impairment.

Additionally, in making the RFC assessment, the ALJ considered Plaintiff's contention that he is limited by hypertension and the effects of hypertension medication. The ALJ cited (1) substantial evidence in the record that contradicts or is inconsistent with Plaintiff's belief that he suffers significant side effects from the medication, and (2) substantial evidence that Plaintiff has a significant exertional capacity, including the ability to carry an air conditioner up three flights of stairs, which capacity would be inconsistent with Plaintiff's assertion that the hypertension limited Plaintiff's ability to engage in gainful activity. (ALJ Decision at 7, PageID # 48-49.)

Because the ALJ's findings regarding Plaintiff's claims about the effects of hypertension and the hypertension medication are supported by substantial evidence on the record, Plaintiff's arguments fail.

*2. Step 3*

At step 3, the "severe" impairments are measured against the Commissioner's Listing of Impairments to determine whether they are of such severity to warrant an automatic determination that the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(iii), (d); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987) (describing satisfaction of a listing as calling for a conclusive presumption of a disabling impairment).

When assessing mental impairments at step 3, one must consider (1) the extent of limitation in the following areas of mental functioning: activities of daily living; maintaining social functioning; concentration, persistence, and pace; and (2) whether the impairment has resulted in episodes of decompensation. Generally, to constitute a listing level impairment, the claimant must experience a marked limitation in two of the three areas identified in point (1) above, or a marked limitation in one of the areas with repeated episodes of decompensation, each of extended duration. 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 12.04(B), 12.06(B). These are the so-called "B criteria" of the Commissioner's mental impairment listings.

Plaintiff argues that the ALJ erred when he failed to find marked limitations in the B criteria of the mental impairment listings. Contrary to Plaintiff's argument, the fact that the ALJ did not find marked limitations in at least two B criteria is consistent with substantial evidence of record, including the psychiatric review technique findings of Dr. Lester (Ex. 4F, PageID # 425) and the expert testimony of Dr. Hymoff (PageID # 81-83).

### 3. *The ALJ's RFC assessment*

Plaintiff contends that the ALJ committed error when he concluded (1) that Plaintiff can complete paperwork and understand written information; (2) that Plaintiff has only moderate difficulty maintaining concentration, persistence, and pace; (3) that Plaintiff can interact adequately with co-workers; (4) that Plaintiff can work "as a power press tender/blanking machine"; and (5) that Plaintiff's blood pressure is controlled with medication.

Dr. Hymoff opined that on a sustained competitive basis, Plaintiff would be able to understand, remember, and carry out simple work; make simple work-related decisions; adapt to ordinary changes in a simple work setting; and respond appropriately to coworkers and supervisors at work at the simple level that did not involve the public. (PageID # 83-84.) Lewis Lester, Ph.D.,

7

a consulting reviewer, offered an assessment consistent with Dr. Hymoff's opinions. (Ex. 5F, PageID # 431.) The expert opinions are substantial evidence in support of the ALJ's determination regarding Plaintiff's mental impairment RFC.

Regarding hypertension, when he made his RFC assessment, the ALJ considered Plaintiff's subjective complaints, and concluded that Plaintiff's complaints were unreliable when viewed in the context of numerous medical records which were inconsistent with Plaintiff's complaints about the effects of hypertension medication and Plaintiff's description of his activity level.[2] (ALJ Decision, ¶ 4, PageID # 49.) The credibility issues regarding Plaintiff's subjective complaints, Dr. Blumenfeld's opinion that Plaintiff's hypertension is not severe, and the lack of a medical source statement that supports a restriction on Plaintiff's work capacity based on hypertension, represent sufficient reliable information to support the ALJ's determination that Plaintiff's hypertension does not meaningfully limit Plaintiff's functional work capacity.

The ALJ's conclusion regarding Plaintiff's assertion that he is unable to complete paperwork and understand written information is similarly supported by the record. As Defendant noted, while the ALJ acknowledged some of Plaintiff's difficulties and his dependence on others to assist with benefits-related paperwork, the ALJ concluded that "Plaintiff's apparent helplessness with this paperwork was inconsistent with his ability to carry out a variety of errands and attend multiple medical and housing assistance appointments." (Response at 8, ECF No. 19.) The ALJ more specifically found that Plaintiff's ability to manage an eviction process, prevail in court on a claim to recover his security deposit, organize friends to help with his move, and attend to his appointments with various assistance programs more accurately reflected Plaintiff's ability to carry out simple work activity than his professed inability to complete paperwork. (ALJ Decision at 8,

---

[2] For example, the medical records describe Plaintiff as carrying an air conditioner up three flights of stairs, moving furniture, and performing yard work.

PageID # 50.)

The ALJ thus did not disregard Plaintiff's subjective complaints. Instead, he did not find the complaints credible when viewed in the context of the entire record.[3] This Court does not make an independent determination of a claimant's credibility, and may only reverse an administrative decision if the ALJ ignores the evidence, misapplies the law, or judges matters entrusted to experts. *Nguyen*, 172 F.3d at 35. The evidence reflects that the ALJ appropriately considered Plaintiff's complaints regarding his difficulties with paperwork, and found that the allegations deserved little weight in light of a review of Plaintiff's medical records and the opinion evidence offered by the experts of record. The ALJ, therefore, considered the pertinent evidence, and his decision is supported by the record evidence.

### 4. *The ALJ's step 5 decision.*

The nature of the work permitted by Plaintiff's RFC, and whether such work exists in substantial numbers in the national economy, are determinations made at step 5 of the sequential evaluation process. Plaintiff contends that the ALJ erred in his assessment of Plaintiff's work capacity because Plaintiff cannot work as a power press tender as he previously did.

The issue in this proceeding, however, is not whether Plaintiff can work as a power press tender.[4] Rather, the issue is whether the ALJ erred in his step 5 determination - that with Plaintiff limited to simple work, Plaintiff can perform work existing in substantial numbers in the national economy, other than his past relevant work.

---

[3] The ALJ's discretion is significant when credibility determinations are at issue. *Rodriguez v. Celebrezze,* 349 F.2d 494, 496 (1st Cir. 1965) ("Issues of credibility and the drawing of permissible inference from evidentiary facts are the prime responsibility of the [Commissioner].").

[4] At Plaintiff's first administrative hearing, a vocational expert testified that Plaintiff would be able to perform his prior work as a power press tender based on a RFC that recognized that Plaintiff could follow simple-to-moderately-complex instructions. (April 13, 2010, Hr'g Tr. at 50, ECF No. 10-2, PageID # 143.) The earlier step 4 determination is not the finding presently before the Court.

9

At step 5 of the evaluation process, the burden shifts to the Acting Commissioner to establish that the jobs that claimant can perform exist in the national economy in significant numbers, giving particular attention to the claimant's age, education, work experience, and residual functional capacity. 20 C.F.R. §§ 404.1520(a)(4)(v), (g)(1), 416.920(a)(4)(v), (g)(1); *Goodermote v. Sec'y of Health & Human Servs.,* 690 F.2d 5, 7 (1st Cir. 1982). This burden is typically addressed through a combined reliance on the Medical–Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, and the testimony of a vocational expert. *Goodermote,* 690 F.2d at 7. A decision that turns on these two factors is generally described as a decision based on the "framework" of the Guidelines, sometimes referred to as the "Grid." The Guidelines, however, address only exertional limitations. Because the Guidelines are based on a claimant's exertional capacity, they "can only be applied when claimant's nonexertional limitations do not significantly impair claimant's ability to perform at a given exertional level." *Rose v. Shalala,* 34 F.3d 13, 19 (1st Cir.1994). Nevertheless, "[i]f a non-strength impairment, even though considered significant, has the effect only of reducing that occupational base marginally, the Grid remains highly relevant and can be relied on exclusively to yield a finding as to disability." *Ortiz v. Sec'y of HHS,* 890 F.2d 520, 524 (1st Cir.1989).

In this case, the ALJ found that Plaintiff's RFC includes the capacity for work at all levels of exertion and applied section 204.00 of the Guidelines in his framework analysis. (ALJ Decision ¶ 9.) Section 204.00 applies to individuals with a maximum capacity for heavy work,[5] and

---

[5] Because the residual functional capacity to perform heavy work includes the capacity to perform medium, light, and sedentary work as well, it "represents substantial work capability for jobs in the national economy at all skill and physical demand levels." 20 C.F.R. Part 404, Subpart P, Appendix 2, § 204.00. In 1985, for example, the Social Security Administration recognized that even a capacity for medium, light, and sedentary work would mean that approximately 2500 different occupations would be available in the national economy. *Titles II & XVI: Capability to Do Other Work-The Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments*, SSR 85-15 (S.S.A. 1985). Social Security Ruling 85-15 provides the following explanation:

> Where there is no exertional impairment, unskilled jobs at all levels of exertion constitute the

provides that the occupational base is in excess of the considerable occupational base available to those with a capacity limited to medium or less demanding work. [6] However, because Plaintiff suffers from non-exertional limitations that prevent him from working in all occupations, the issue is the extent to which Plaintiff's particular non-exertional limitations erode the occupation base; *i.e.*, "how much the individual's work capability is further diminished in terms of any types of jobs within these exertional ranges that would be contraindicated by the additional limitations or restrictions." *Titles II & XVI: Capability to Do Other Work—The Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments*, SSR 85-15 (S.S.A. 1985).

At Plaintiff's October 29, 2012, hearing, the ALJ asked a vocational expert whether a RFC for simple instructions and decisions, ordinary changes in the workplace, and appropriate interaction with supervisors and coworkers would significantly erode the unskilled work base. (Oct. 29, 2012, Hr'g Tr. at 23, PageID # 84.) The vocational expert responded that it would not. (*Id.*) Although the ALJ did not cite this testimony in his decision, the testimony is substantial evidence supporting the ALJ's step 5 decision. [7]

---

    potential occupational base for persons who can meet the mental demands of unskilled work. These jobs ordinarily involve dealing primarily with objects, rather than with data or people, and they generally provide substantial vocational opportunity for persons with solely mental impairments who retain the capacity to meet the intellectual and emotional demands of such jobs on a sustained basis. However, persons with this large job base may be found disabled because of adversities in age, education, and work experience.

*Id.* Here, Plaintiff is a younger individual with a high school education and the ability to communicate in English. (ALJ Decision ¶¶ 6-7.) With this vocational background, the Guidelines suggest a "not disabled" finding even at the sedentary level of exertion. Appendix 2, § 201.00(h)(1).

[6] It is not necessarily obvious that every claimant lacking a severe physical impairment can, on a sustained basis, meet the demands of heavy work, which "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds." 20 C.F.R. § 416.967(d). However, a review of the record in this case does not suggest that Plaintiff is subject to any exertional limitation that would prevent heavy work activity, and Plaintiff bears the burden of persuasion on this issue. *Sawyer v. Colvin,* No. 1:12–CV–231–JAW, 2013 WL 1760534, at *4 (D. Me. Mar. 30, 2013) *recommended decision adopted*, 2013 WL 1760524 (Apr. 24, 2013) ("[T]he burden remains with the claimant at the stage of the process in which RFC is determined….").

[7] "Simple" work denotes a subset of "unskilled" labor and therefore a RFC for simple work imposes a non-exertional limitation in addition to Plaintiff's limitation related to public interaction. *See, e.g.*, *Baker v. Soc. Sec. Admin. Comm'r*,

CONCLUSION

Based on the foregoing analysis, the recommendation is that the Court affirm Defendant's final decision and enter judgment in favor of Defendant.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 30th day of December, 2014.

---

No. 1:10-CV-00167-JAW, 2011 WL 1298694, at *3 (D. Me. Mar. 31, 2011) *recommended decision adopted*, 2011 WL 1481310 (Apr. 19, 2011). Given these non-exertional limitations, the vocational expert's testimony is more reliable than a framework decision premised exclusively on Grid section 204.00 and Social Security Ruling 85-15.